## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LEO SIMON, LAURA SIMON, and JOHN SIMON,**<br><br>       **Plaintiffs,**<br><br>  **v.**<br><br>**CARMINE A. GIANATIEMPO, M.D., KILLOL PATEL, M.D., and ENGLEWOOD HOSPITAL AND MEDICAL CENTER, INC.,**<br><br>       **Defendants.** | Civ. No. 2:19-cv-602 (WJM)<br><br><br>**OPINION** |

### WILLIAM J. MARTINI, U.S.D.J.

In this medical malpractice action, Plaintiff Leo Simon ("Simon") and his parents, Plaintiffs Laura and John Simon (collectively, "Plaintiffs"), allege that Defendants Englewood Hospital and Medical Center, Inc. ("Englewood Hospital" or the "hospital"), Carmine A. Gianatiempo, M.D. ("Dr. Gianatiempo"), and Killol Patel, M.D. ("Dr. Patel"), negligently performed Simon's tracheostomy and failed to provide him with proper medical care. This matter is before the Court on three motions for partial summary judgment filed by Englewood Hospital, ECF No. 63; by Drs. Gianatiempo and Patel, ECF No. 64; and by Plaintiffs, ECF No. 65. The Court did not hear oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons that follow, Englewood Hospital's motion for partial summary judgment is **GRANTED**; Drs. Gianatiempo and Patel's motion for partial summary judgment is **GRANTED**; and Plaintiffs' motion for partial summary judgment is **DENIED**.

### I.    FACTUAL BACKGROUND [1]

---

[1] The Court derives this undisputed version of events from Plaintiffs' Statement of Undisputed Material Facts ("Pls. SUMF"), ECF No. 65-13, which, of the three statements of material facts filed by the parties, presents the most complete account of Simon's medical issues and tracheostomy procedure. *See also* Englewood Hospital's Resp. to Pls. SUMF, ECF No. 66; Gianatiempo and Patel Opp. Br. at 2, ECF No. 67 (adopting and restating Englewood Hospital's responses to Pls. SUMF). After carefully reviewing the parties' statements of material facts, ECF Nos. 63-2, 64-3, 65-13, and the responses and counterstatements thereto, ECF Nos. 66, 67 at 2, 71-2, 72-2, 74-1, the Court is prompted to instruct counsel for each party that in future cases, they shall strictly comply with the local civil rules, specifically Local Civil Rule 56.1 governing motions for summary judgment. Those portions of the parties' statements of material facts, and the responses thereto, "that lack citation to relevant record evidence (unless admitted by the opponent),

On January 9, 2017, Simon, age nineteen, presented to the emergency room at Englewood Hospital in Englewood, New Jersey, with complaints of chest pain and a fever. Pls. SUMF at 1.  By January 11, 2017, he had developed severe respiratory distress and was transferred to the intensive care unit.  *Id.*  On January 12, 2017, Simon was intubated and seven days later, on January 19, he underwent a percutaneous tracheostomy procedure.[2]  *Id.*  Dr. Gianatiempo performed the procedure without assistance and recorded the details in a procedure note, writing that "Dr. K. Patel" performed the bronchoscopy procedure.  *Id.* at 1-2; Gianatiempo Dep. Tr. 60:18-61:8, 61:13-61:15.  Dr. Patel, however, was not the pulmonary doctor on call at the hospital that day, and he testified that he neither performed the bronchoscopy nor was involved in Simon's care.  Patel Dep. Tr. 16:7-17:1, 18:24-19:2, 22:24-23:7.

On January 23, 2017, Englewood Hospital transferred Simon to the pediatric intensive care unit at Columbia Presbyterian Hospital in New York.  Pls. SUMF at 2.  The Englewood Hospital discharge summary reflects he had been diagnosed with Epstein-Barr virus, Guillain-Barré syndrome, and pneumonia.  Pls. Ex. 3. at 1-5, ECF No. 65-5.  On February 15, 2017, Columbia Presbyterian Hospital transferred Simon to the Kennedy Krieger Institute in Maryland for rehabilitation.  Pls. SUMF at 2.  On March 24, 2017, he presented to the emergency room at Johns Hopkins Hospital due to his enlarged tracheostomy stoma measuring approximately thirteen centimeters in length, and his tracheostomy tube repeatedly decannulating.[3]  *Id.*  Simon's medical expert, Robert F. Ward, M.D. ("Dr. Ward"), a specialist in pediatric otolaryngology, testified that given the size of the stoma, "[i]t would be very difficult to keep [the] trachea in place with any head movement" and the "tracheostomy tube was so loose it was resting on [Simon's] skin instead of in [his] airway."  Ward Dep. Tr. 28:20-28:21, 131:16-131:21.

## II.     PROCEDURAL HISTORY

On January 17, 2019, Simon and his parents filed this medical malpractice suit against Englewood Hospital, Dr. Gianatiempo, and Dr. Patel, alleging that they negligently performed Simon's tracheostomy and caused him to suffer a multitude of damages and lasting injuries including a permanent open tracheal wound, prolonged hospitalization, a three-month paralysis, muscular wasting and disuse atrophy, severe mental anguish and emotional distress, disfigurement, and loss of chance for a cure.  Compl. ¶ 23, ECF No. 1.

---

contain improper legal argument or conclusions, or recite factual irrelevancies" shall be disregarded.  *Helms v. Ryder*, No. 14-2470, 2017 WL 1356323, at *1 n.1 (D.N.J. Apr. 12, 2017) (citing L. Civ. R. 56.1(a)).

[2] A tracheostomy, or tracheotomy, is "[a]n operation to make an opening into the trachea."  Stedman's Medical Dictionary 928900 (Westlaw).  The surgically created opening is known as a stoma.  *Id.* 851270.

[3] Decannulation is the "[p]lanned or accidental removal of a tracheostomy tube."  Stedman's Medical Dictionary 229930 (Westlaw).

The Complaint, as amended, alleges four causes of action: "negligence and/or medical malpractice" against Drs. Gianatiempo and Patel, for which Englewood Hospital is also vicariously liable (First Cause of Action); lack of informed consent (Second Cause of Action); and loss of a child's services (Third Cause of Action). Am. Compl. ¶¶ 27-40, ECF No. 4. The Fourth Cause of Action is labelled as one for vicarious liability against Englewood Hospital, but alleges that the hospital is also liable for its own negligent acts, like failing "to monitor, make sure, and/or supervise that the tracheotomy was properly performed," failing "to properly train their medical staff," and failing "to have in place" a variety of "appropriate policies and procedures." *Id.* ¶ 45. The Court exercises subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(a) based on the diverse citizenship of the parties and an amount in controversy exceeding $75,000. *See id.* ¶ 2.

The parties now each move for summary judgment on different issues and claims. Englewood Hospital asks the Court to determine that: (1) Plaintiffs' Affidavit of Merit cannot support vicarious liability claims for the negligence of unidentified hospital staff; (2) Plaintiffs' Affidavit of Merit does not support the direct claims asserted against the hospital in the Fourth Cause of Action; and (3) damages against the hospital must be capped at $250,000 pursuant to the New Jersey Charitable Immunity Act, N.J.S.A. 2A:53A-8. Def. Mov. Br., ECF No. 63-1. Drs. Gianatiempo and Patel ask the Court to determine that: (1) Plaintiffs cannot establish a *prima facie* case of medical malpractice or failure to obtain informed consent against Dr. Patel in the First and Second Causes of Action; and (2) Plaintiffs Laura and John Simon cannot recover for loss of their adult son's services in the Third Cause of Action. Defs. Mov. Br., ECF No. 64-10. Finally, Plaintiffs ask the Court to determine that there is no genuine factual dispute that Dr. Gianatiempo deviated from the standard of care when he performed the tracheostomy. Pls. Mov. Br., ECF No. 65-14.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding a motion for summary judgment, the Court construes all facts and inferences in the light most favorable to the non-moving party. *Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).

The moving party bears the initial burden of showing the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact—that is, the "absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). Once the moving party meets this burden, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a *genuine issue for trial* and do more than simply show that there is some metaphysical doubt as to the material facts." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (emphasis in original and internal quotation marks

omitted).  The non-moving party must present actual evidence that creates a genuine issue for trial—reliance on unsupported assertions, speculation, or conclusory allegations is insufficient to defeat a motion for summary judgment.  *Solomon v. Soc'y of Auto. Engineers*, 41 F. App'x 585, 586 (3d Cir. 2002) (citing *Celotex*, 477 U.S. at 324); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").

Furthermore, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, (1986).  "A fact is 'material' . . . if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law."  *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson*, 477 U.S. at 248, (1986)).  "A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Id.* (quoting *Anderson*, 477 U.S. at 248).

## IV.  DISCUSSION

### A.  Drs. Gianatiempo and Patel's Motion for Partial Summary Judgment

The Court begins with Drs. Gianatiempo and Patel's jointly filed motion for partial summary judgment.  ECF No. 64.  The motion advances two arguments.  As to the first argument, Dr. Patel argues that he is entitled to summary judgment on the First and Second Causes of Action because Plaintiffs cannot establish a *prima facie* case of medical malpractice or failure to obtain informed consent.  Defs. Mov. Br. at 3-7, ECF No. 64-10. Dr. Gianatiempo does not seek summary judgment on the First or Second Causes of Action.

As to the motion's second argument, Drs. Gianatiempo and Patel together argue that they are entitled to summary judgment on the Third Cause of Action because Plaintiffs Laura and John Simon cannot recover for loss of their adult son's services.  *Id.* at 6.  The Court addresses each of the two arguments in turn.

#### 1.  Whether Plaintiffs Have Established a *Prima Facie* Case Against Dr. Patel

"A medical malpractice case is a kind of tort action in which the traditional negligence elements are refined to reflect the professional setting of a physician-patient relationship."  *Verdicchio v. Ricca*, 179 N.J. 1, 23 (2004).  To establish a *prima facie* case of medical negligence based on a deviation from the standard of care, "a plaintiff must present expert testimony establishing: (1) an applicable standard of care, (2) a deviation from this standard of care, (3) injury, and (4) proximate causation between the breach and the injury."  *Jackson v. Fauver*, 334 F. Supp. 2d 697, 740 (D.N.J. 2004) (quoting *Teilhaber*

*v. Greene,* 320 N.J. Super. 453, 465 (App. Div. 1999)).  To establish a *prima facie* case of medical negligence based on lack of informed consent, a plaintiff must show:

> (1) the physician failed to comply with the [reasonably-prudent-patient] standard for disclosure; (2) the undisclosed risk occurred and harmed the plaintiff; (3) a reasonable person under the circumstances would not have consented and submitted to the operation or surgical procedure had he or she been so informed; and (4) the operation or surgical procedure was a proximate cause of plaintiff's injuries.

*Fox v. Bayside State Prison*, No. 14-5344, 2017 WL 960348, at *4-5 (D.N.J. Mar. 13, 2017) (quoting *Howard v. Univ. of Med. & Dentistry of N.J.*, 800 A.2d 73, 79 (N.J. 2002)). While expert testimony is not required to establish the "prudent patient" standard for disclosure or to prove a physician failed to meet that standard, "a plaintiff cannot prevail on a lack of informed consent claim . . . without expert testimony that the relevant risk was recognized by the professional community."  *Chamberlain v. Giampapa*, 210 F.3d 154, 162 (3d Cir. 2000) (discussing *Tyndall v. Zaboski*, 306 N.J. Super. 423, 426 (App. Div. 1997)).

Here, there is a glaring absence of evidence, expert or otherwise, linking Dr. Patel to the tracheostomy procedure or Simon's medical care to support any claim against him for medical malpractice.  It bears repeating that Drs. Gianatiempo and Patel offered conflicting testimony as to whether Dr. Patel was, in fact, the doctor that performed Simon's bronchoscopy procedure.  *See* Gianatiempo Dep. Tr. 60:18-61:8, 61:13-61:15; Patel Dep. Tr. 16:7-17:1, 18:24-19:2, 22:24-23:7.  Fatal to Plaintiffs' malpractice claims, however, is that Plaintiffs' sole expert report authored by their expert witness Alan Fein, M.D. ("Dr. Fein"), contains no standard of care criticism of Dr. Patel.  *See* Defs. Ex. D, ECF No. 64-8.  The report does not substantively discuss Dr. Patel at all.  *Id.*  Likewise, Dr. Fein testified that he had no opinions as to a deviation from the standard of care on the part of Dr. Patel.  Fein Dep. Tr. 55:7-55:12, ECF No. 64-9.  Without offering any expert testimony concerning his involvement with Simon's tracheostomy procedure, Plaintiffs cannot establish a *prima facie* case of medical malpractice against Dr. Patel based on a deviation from the standard of care or based on lack of informed consent.  Dr. Patel is therefore entitled to summary judgment on the First and Second Causes of Action for medical malpractice and failure to obtain informed consent.

### 2.  Whether Plaintiffs Can Recover for Loss of Their Adult Child's Services

Drs. Gianatiempo and Patel together argue that they are entitled to summary judgment on the Third Cause of Action because Simon's parents, Plaintiffs Laura and John Simon, cannot recover for loss of their adult child's services.  Defs. Mov. Br. at 9-10, ECF No. 64-10.  In response, Plaintiffs contend that Simon was not emancipated at the time of his injury, notwithstanding his age of nineteen, because he was medically and financially

dependent on his parents.  Pls. Opp. Br. at 6-7, ECF No. 71.  Plaintiffs further point out that Englewood Hospital referred to Simon as a "nineteen-year-old boy" in his medical charts and transferred him to a pediatric unit at Columbia Presbyterian Hospital.  *Id.*

While New Jersey common law recognizes a parent's cause of action for loss of services in cases involving injury to a minor child, it presently does not recognize a parent's cause of action for loss of services in cases involving injury to a child who has reached the age of majority.  The New Jersey Superior Court, Appellate Division, addressed this very issue in *Tynan v. Curzi*, 332 N.J. Super. 267 (App. Div. 2000).  In that case, a parent sought the right to seek *per quod* damages for lost services, earnings, society, and companionship resulting from her nineteen-year-old daughter's severe injuries sustained in an automobile accident.  *Id.* at 269.  The daughter was legally blind and suffered cognitive deficiencies that rendered her unable to care for herself, such that her parent became her appointed legal guardian.  *Id.* at 269-70.  Her parent, similar to Simon's parents here, argued that despite her daughter's age, her daughter was a second-year college student living at home prior to the accident, and was not yet emancipated.  *Id.*  The Appellate Division stated:

> The argument that a parent should be able to recover lost services of an adult unemancipated child . . . where the child is so severely injured by a tortfeasor that he or she is virtually totally disabled is compelling.

> We are mindful of the moving and poignant circumstances confronting plaintiff, as well as other parents, who may find themselves in similar situations as the result of catastrophic injuries sustained by their unemancipated children, regardless of age. We are not unsympathetic to expanding the loss of consortium cause of action to include severely injured adult unemancipated children.

*Id.* at 277.  The Appellate Division recognized, however, that to expand the cause of action to include severely injured adult unemancipated children would be to create "a new cause of action beyond that which has been the common law of this State," a function to which "[a]n intermediate appellate court 'should normally defer to the Supreme Court or to the Legislature." *Id.*  As neither this Court nor the parties have uncovered authority overruling or modifying *Tynan*, it remains that New Jersey does not recognize a parent's cause of action for loss of services in cases involving injury to an adult child.  Drs. Gianatiempo and Patel are therefore entitled to summary judgment on the Third Cause of Action for loss of a child's services.[4]

---

[4] In ruling that Drs. Gianatiempo and Patel are entitled to summary judgment on the Third Cause of Action, the Court has dismissed what appears to be the only claim of the Amended Complaint that Plaintiffs Laura and John Simon have standing to assert.  The Court refers to Plaintiffs collectively throughout this Opinion for purposes of clarity, and notes the Complaint asserts each cause of action on behalf of Simon *and* his parents, but it is not apparent that his parents have standing to assert the remaining medical malpractice claims on Simon's behalf.

### B.    Plaintiffs' Motion for Partial Summary Judgment

Turning next to Plaintiffs' motion, Plaintiffs argue they are entitled to partial summary judgment because it is undisputed that Dr. Gianatiempo deviated from the standard of care when he performed Simon's tracheostomy seven days after Simon was intubated, as opposed to waiting the standard fourteen days after intubation to perform the procedure.  Pls. Mov. Br. at 5-6, ECF No. 65-14.  Plaintiffs presumably seek a judgment in their favor on their First Cause of Action for medical malpractice against Dr. Gianatiempo.

As previously stated, a plaintiff seeking to establish a *prima facie* case of medical malpractice must prove that the physician deviated from recognized standards of medical care and that this deviation proximately caused the injuries of which the plaintiff complains.  *See Jackson*, 334 F. Supp. 2d at 740.  Contrary to Plaintiffs' argument, the parties' experts present competing views on the recognized standard of care a physician is required to exercise when performing a tracheostomy on an intubated patient.  Plaintiffs' expert Dr. Fein asserts that absent an emergency, "the standard of care is to wait at least fourteen days after intubation before performing a tracheostomy," while Defendants' expert maintains that there is "no specific standard of care regarding the actual timing of [a] tracheotomy" and given Simon's "severe form of [Guillain-Barré syndrome] which would require a long recovery and extensive rehabilitation," "performing a tracheotomy one week after intubation is certainly reasonable" as opposed to "prolonged endotracheal intubation."  *Compare* Pls. Ex. 8 at 10, ECF No. 65-11, *with* Def. Ex. D at 26, ECF No. 66-6.  Because this evidence creates a genuine issue of material fact as to the standard of care and whether Dr. Gianatiempo's clinical judgment was appropriate in Simon's circumstances, Plaintiffs are not entitled to summary judgment on their First Cause of Action against Dr. Gianatiempo.

### C.    Englewood Hospital's Motion for Partial Summary Judgment

The Court turns last to Englewood Hospital's motion and examines whether (1) Plaintiffs' Affidavit of Merit can support vicarious liability claims for the negligence of unidentified hospital staff; (2) Plaintiffs' Affidavit of Merit supports the direct claims asserted against the hospital in the Fourth Cause of Action; and (3) damages against the hospital must be capped at $250,000 pursuant to the New Jersey Charitable Immunity Act.

### 1.    Whether Plaintiffs' Affidavit of Merit Complies with the Affidavit of Merit Statute

New Jersey's Affidavit of Merit ("AOM") statute requires:

> In any action for damages for personal injuries . . . resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of

the answer to the complaint by the defendant, provide *each defendant* with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.

N.J.S.A. 2A:53A-27 (emphasis added).  The statute is designed to thwart baseless lawsuits against certain "licensed person[s]," and permits cases to proceed only "if they have been duly screened by an eligible affiant who vouches that they have sufficient indicia of merit." *Hill Int'l, Inc. v. Atl. City Bd. of Educ.*, 438 N.J. Super. 562, 573 (App. Div. 2014).  A "licensed person" includes, among other licensed professionals, a "physician in the practice of medicine or surgery" and "a health care facility."  N.J.S.A. 2A:53A-26(f), (j).  As to who qualifies as an "eligible affiant" in a medical malpractice case, "the AOM statute imposes additional and quite specific rules," but "the foundational requirement [is] that the AOM be signed by an 'appropriate licensed person'"—that is, "a person who holds the same class of professional license as the defendant."  *Endl v. New Jersey*, No. 12-3564, 2016 WL 1224133, at *5-6 (D.N.J. Mar. 29, 2016) (citing *Hill Int'l, Inc.*, 438 N.J. Super. at 580-90 and discussing the AOM statutory framework in depth).

"Not every claim against a licensed person requires an affidavit of merit."  *Harris v. Health*, No. A-2462-19, 2021 WL 1168377, at *4 (N.J. Super. Ct. App. Div. Mar. 29, 2021).  "An 'affidavit will only be needed when the underlying harmful conduct involves professional negligence, implicating the standards of care within that profession.'" *Id.* (quoting *McCormick v. State*, 446 N.J. Super. 603, 613-14 (App. Div. 2016)).

Here, Plaintiffs seek to hold Englewood Hospital liable for the actions of Drs. Gianatiempo and Patel under a theory of vicarious liability, as well as for the hospital's own negligent credentialing, hiring, training, and supervising of its healthcare providers. Because the hospital's liability under either theory "hinges upon allegations of deviation from professional standards of care by licensed individuals who worked for [it]," the statute requires Plaintiffs to provide an AOM regarding these claims.  *Estate of Bowser v. Atl. Cty.*, No. 18-5606, 2019 WL 1277515, at *3 (D.N.J. Mar. 20, 2019) (quotation marks and citation omitted); *Tentoni v. Jeffers*, No. 08-1976, 2010 WL 4810758, at *4 (D.N.J. Nov. 19, 2010) (concluding plaintiff had an obligation to provide an AOM regarding negligent supervision claim because the claim's underlying factual allegations required evidence of a deviation from the standard of care); *Harris*, 2021 WL 1168377, at *5 (concluding plaintiff had an obligation to provide an AOM regarding direct and vicarious claims against the hospital because the claims' underlying factual allegations required evidence of a deviation from the standard of care).

The pertinent question is whether the AOM provided by Plaintiffs meets the statute's requirements or is deficient in some regard, as Englewood Hospital argues it is. Contemporaneous with filing their Complaint, Plaintiffs filed an AOM authored by Dr. Fein, a board-certified physician specializing in the practice of pulmonary and internal

medicine and critical care.  AOM ¶¶ 1-2, ECF No. 2.  Dr. Fein's experience includes private practice as well as serving as the Director of Pulmonary and Critical Care Medicine at two different hospitals from 1983 through 1997, and 1997 through 2001, respectively.  *Id.* ¶ 3.  Having "performed tracheostomies, evaluated the performance of same and determined whether tracheostomies are indicated in hundreds of patients," Dr. Fein offered the following opinion:

> [T]he doctors involved in Leo B. Simon's medical care, specifically Carmine A. Gianatiempo, M.D., and Killol Patel, M.D., deviated from the good and accepted standard of medical practice in performing a tracheostomy that was not indicated and improperly performed on January 19, 2017.  Each doctor acted outside of the scope of their specialties as this was an elective non-emergent procedure that should have been done by an Otorhinolaryngology (ENT)/Head and Neck Surgeon.

*Id.* ¶ 4.  Dr. Fein further opined that "the care, skill and/or knowledge exercised and/or exhibited by the staff" and "by the agents and/or employees that were acting on behalf of Englewood Hospital . . ., Carmine A. Gianatiempo, M.D., and Killol Patel, M.D. fell below accepted medical standards and treatment practices" and were "a substantial contributing factor in causing injuries to Leo B. Simon." *Id.* ¶¶ 6-8.

Englewood Hospital challenges the sufficiency of the AOM on the grounds that Dr. Fein's statements implicating general, unnamed staff, agents, and employees cannot support vicarious liability claims against the hospital.[5]  Def. Mov. Br. at 8-14, ECF No. 63-1.  The Court agrees.  "Courts have repeatedly held that a plaintiff's AOMs must specifically name the employees whose negligence underlies [the] vicarious liability claims." *White v. Willingboro Twp.*, No. 18-10964, 2020 WL 3604091, at *4 (D.N.J. July 2, 2020) (collecting cases).  While the AOM here specifically identifies Drs. Gianatiempo and Patel, its references to unnamed staff, agents, and employees are merely blanket terms; they do not put Englewood Hospital on notice of the identities or roles of any other allegedly negligent healthcare providers on whom Dr. Fein may or may not be qualified to opine.  *See, e.g.*, *Johnson v. Handler*, No. A-3862-13T3, 2015 WL 10677203, at *6-7 (N.J. Super. Ct. App. Div. Apr. 15, 2016) (concluding that in vicarious liability cases against healthcare facilities, an AOM must specifically identify whose negligence the affiant purported to review; merely referring to the hospital's "physicians and other healthcare providers" was insufficient).  To that end, Plaintiffs cannot base vicarious liability claims against the hospital on the negligence of staff not explicitly identified in the AOM.

Englewood Hospital also challenges the sufficiency of the AOM on the grounds that Dr. Fein did not offer, and is not qualified to offer, an opinion on Plaintiffs' direct claims

---

[5] The record reflects that Englewood Hospital objected to the AOM and notified Plaintiffs' counsel of the alleged deficiencies on multiple occasions throughout the early stages of this litigation.  *See* Def. Exs. D-G, ECF Nos. 63-8 through 63-11; *see also* Answer at 9, ECF No. 9 (demanding AOM for "any and all claims asserted against [Englewood Hospital]").

for negligent credentialing, hiring, training, and supervising of the hospital's healthcare providers. The hospital argues that Dr. Fein did not address "hospital policy, procedures, and the like" related to the direct claims, nor is he qualified to do so. Def. Mov. Br. at 15, ECF No. 63-1. Plaintiffs assert that Dr. Fein is qualified to opine on these claims by virtue of his prior experience as a former Director of Pulmonary and Critical Care Medicine at two hospitals. Pls. Opp. Br. at 5-6, ECF No. 72. Even assuming Dr. Fein is qualified to offer an opinion on Englewood Hospital's credentialing, hiring, training, and supervising, the hospital is correct that Dr. Fein does not address these subjects, nor does he purport to address them, in the AOM. He strictly confines his opinions to the performance of Simon's tracheostomy and the applicable standard of care for that procedure. Plaintiffs, therefore, have not provided Englewood Hospital with an AOM that vouches for the meritoriousness of the negligence claims asserted directly against it in the Fourth Cause of Action. Because the failure to provide an AOM is deemed a failure to state a cause of action, Plaintiffs' direct claims against the hospital must be dismissed.[6] *See* N.J.S.A. 2A:53A-29 (deeming noncompliance with the AOM statute a failure to state a cause of action); *Couri v. Gardner*, 173 N.J. 328, 333 (2002) ("[F]ailure to provide an affidavit results in dismissal of the complaint.").

## 2. Whether Englewood Hospital is Entitled to the Cap on Damages Under the Charitable Immunity Act

Finally, Englewood Hospital invokes the Charitable Immunity Act, N.J.S.A. 2A:53A-8, and seeks an Order limiting its damages at trial for any alleged negligence. Def. Mov. Br. at 25, ECF No. 63-1.

New Jersey's Charitable Immunity Act limits the liability of nonprofit hospitals for negligence at $250,000. N.J.S.A. 2A:53A-8. The statute provides:

[A]ny nonprofit corporation . . . organized exclusively for hospital purposes shall be liable to respond in damages to such beneficiary who shall suffer damage from the negligence of such corporation . . . or of its agents or servants to an amount not exceeding $250,000, together with interest and costs of suit, as the result of any one accident and to the extent to which such damage, together with interest and costs of suit, shall exceed the sum of $250,000 such nonprofit corporation . . . organized exclusively for hospital purposes shall not be liable therefor.

*Id.* To qualify for the protections of the statute, "a defendant must demonstrate two elements: (1) that the defendant is a charitable organization that is organized exclusively for hospital purposes, and (2) that the plaintiff was a beneficiary of its services."

---

[6] This ruling does not disturb Plaintiffs' vicarious liability claims against Englewood Hospital articulated in the Fourth Cause of Action. *See* Am. Compl. ¶¶ 41-44, 47, ECF No. 4.

*Hottenstein v. City of Sea Isle City*, 981 F. Supp. 2d 292, 294 (D.N.J. 2013) (citing *Mottola v. Union City*, 2006 WL 2177405, at *2 (D.N.J. July 31, 2006)).

The Court is satisfied that Englewood Hospital has met its burden as to both elements. The hospital submitted an affidavit completed by its Chief Financial Officer, Anthony Orlando, attached to which are the hospital's Amended and Restated Certificate of Incorporation, Revised Bylaws, and a letter dated September 23, 1996, from the Internal Revenue Service. *See* Orlando Aff., ECF No. 63-3. The affidavit and documents reflect that the hospital is a charitable organization within the meaning of Section 501(c)(3) of the Internal Revenue Code and organized exclusively for the purpose of providing hospital facilities and services for the treatment and care of acutely ill individuals. *Id.*, Exs. A-C. This evidence, which Plaintiffs do not challenge, sufficiently demonstrates Englewood Hospital is a charitable organization within the meaning of the Charitable Immunity Act. *See Hottenstein*, 981 F. Supp. 2d at 295 (finding defendants satisfied the Act by producing certification from hospital staff stating that it was a nonprofit entity organized exclusively for hospital purposes and a Revised Articles of Incorporation which supported that assertion).

Likewise, Englewood Hospital demonstrates that Simon was a beneficiary of its services. Simon presented to the hospital's emergency room and remained a patient for approximately two weeks, during which time he received medical treatment and care, the very activities that the hospital was organized to advance. *See Sexton v. Rizzetta*, No. 15-3181, 2017 WL 6055386, at *3 (D.N.J. Dec. 7, 2017) (finding that the "triage evaluation, multiple medications, and other nursing assessments" that plaintiff received compelled the conclusion that he was a beneficiary of the defendant medical center's services); *Mottola*, 2006 WL 2177405, at *2 ("[E]very patient at the hospital receiving care is a beneficiary of its work. Plaintiff has received treatment at both [hospitals] and is therefore considered a beneficiary under the statute.").

In opposition, Plaintiffs contend that the Charitable Immunity Act is inapplicable because Defendants' actions amounted to gross negligence. Pls. Opp. Br. at 12-13, ECF No. 72; *see* N.J.S.A 2A:53A-7(c) ("Nothing in this section shall be deemed to grant immunity to: (1) any nonprofit corporation . . . or its trustee, director, officer, employee, agent, servant or volunteer, causing damage by a willful, wanton or grossly negligent act . . ."). But the Complaint does not articulate a claim for gross negligence, and Plaintiffs do not explain how the evidentiary record demonstrates something more than the alleged ordinary negligence. Their argument concerning the application of the Charitable Immunity Act to grossly negligent behavior is therefore moot. *See Hottenstein*, 981 F. Supp. 2d at 295, n.5 (finding plaintiffs' gross negligence argument in response to the application of the Charitable Immunities Act moot where plaintiffs raised the argument in their opposition to defendant's motion for summary judgment and failed to explain how the evidentiary record supported allegations of gross negligence).

Accordingly, the Court finds Englewood Hospital is entitled to an Order limiting its liability for negligence to damages of $250,000.

## V.      CONCLUSION

For the reasons stated above, Englewood Hospital's motion for partial summary judgment, ECF No. 63, is **GRANTED**; Drs. Gianatiempo and Patel's motion for partial summary judgment, ECF No. 64, is **GRANTED**; and Plaintiffs' motion for partial summary judgment, ECF No. 65, is **DENIED**.

As a result, any vicarious liability claims against Englewood Hospital based on the negligence of unidentified employees or agents are **DISMISSED WITH PREJUDICE**; any direct claims of negligence against Englewood Hospital are **DISMISSED WITH PREJUDICE**; all claims against Dr. Patel are **DISMISSED WITH PREJUDICE**; and Plaintiffs Laura and John Simon's Third Cause of Action for loss of a child's services is **DISMISSED WITH PREJUDICE**.  The following claims remain: Plaintiff Leo Simon's First Cause of Action against Dr. Gianatiempo for medical malpractice, Second Cause of Action against Dr. Gianatiempo for lack of informed consent, and Fourth Cause of Action against Englewood Hospital for vicarious liability based on the alleged negligence of Dr. Gianatiempo.

An appropriate Order shall accompany this Opinion.


            /s/ William J. Martini
          **WILLIAM J. MARTINI, U.S.D.J.**


**Date:  April 21, 2022**